UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:19-cv-05032-JCC-TLF <br><br> REPORT AND RECOMMENDATION <br><br> Noted for November 21, 2019 |

Plaintiff has brought this matter for judicial review of Defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

For the reasons set forth below, the undersigned recommends that the Court reverse Defendant's decision to deny benefits and remand this matter for further administrative proceedings pursuant to sentence six of 42 U.S.C. 405(g).

I. ISSUES FOR REVIEW

1. Should the Court remand this case pursuant to sentence six of 42 U.S.C. 405(g)?
2. Did the ALJ err in evaluating the medical opinion evidence?
3. Did the ALJ err in evaluating Plaintiff's symptom testimony?

REPORT AND RECOMMENDATION - 1

II. BACKGROUND

On January 29, 2015, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of May 8, 2014. AR 28, 187-93. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 28, 124-26, 133-38. A hearing was held before Administrative Law Judge ("ALJ") Wayne Araki on January 31, 2017. AR 48-96. On June 14, 2017, the ALJ issued a decision finding Plaintiff was not disabled. AR 25-39. The Social Security Appeals Council denied Plaintiff's request for review on June 19, 2018. AR 14-19.

On September 14, 2018, Plaintiff filed a new application for disability insurance benefits, alleging a disability onset date of August 1, 2015. Dkt. 8-1, p. 2. On April 30, 2019, the Social Security Administration found Plaintiff disabled as of October 16, 2018, based on an opinion from state agency consultant Andrew Forsyth, Ph.D. that Plaintiff had a previously undiagnosed somatic symptom disorder[1] that met listing 12.07 and was disabled for "at least" six months prior to an April 16, 2019 consultative examination. Dkt. 8-1, pp. 5-7, 10. Plaintiff is presently receiving disability insurance benefits. Dkt. 8, p. 15.

On January 10, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for an award of benefits or additional proceedings. Dkt. 8, pp. 19-20.

---

[1] Somatic symptom disorder is a psychological condition where the patient is genuinely convinced they are suffering from distressing physical symptoms (not intentionally producing or feigning such symptoms) caused by terrible ailments – but the ailments are not diagnosed by physicians – and the patient experiences extreme discomfort such as pain or an extreme deficits such as fatigue or blindness and is focused on experiences of pain or other discomforts associated with those ailments. *See, Easter v. Bowen,* 867 F.2d 1128, 1129-30 (8th Cir. 1989); *Lori H. v. Berryhill,* No. 3:18-CV-0472 (DEP), 2019 WL 1578195 (N.D.N.Y. 2019) (explaining symptoms, and nature of somatic symptom disorder or somatoform disorder); 20 CFR 404, Subpart P, Appendix 1-Part A2, listing 12.00 Mental Disorders, and 12.07 Somatic symptom and related disorders.

REPORT AND RECOMMENDATION - 2

III.   STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

IV.   DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: post-traumatic stress disorder ("PTSD"), depression, and migraine headaches. AR 30. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past relevant work, but determined that there were other light and medium

unskilled jobs Plaintiff could perform; therefore the ALJ determined at step 5 that Plaintiff was not disabled. AR 37-39.

      A. <u>Whether this case should be remanded pursuant to sentence six of 42 U.S.C. 405(g)</u>

Plaintiff asks this Court to reverse the ALJ's decision based on Defendant's finding that Plaintiff was disabled as of October 16, 2018 and to remand this case under sentence six of 42 U.S.C. 405(g). Dkt. 8, p. 15.

"In cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Secretary are set forth in sentence four and sentence six of [42 U.S.C.] § 405(g)." *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993) (*citing Melkonyan v. Sullivan*, 501 U.S 89, 99-100 (1991)).  Sentence six of the act reads:

> The [district] court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

42 U.S.C. § 405(g). "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Schaefer*, *supra*, 509 U.S. at 297, n. 2. (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan*, *supra*, 501 U.S. at 99-100; *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Plaintiff maintains that the April 16, 2019 consultative examination and Dr. Forsyth's finding that Plaintiff had a previously undiagnosed somatic symptom disorder constitute new and material evidence justifying a sentence six remand. Dkt. 8, pp. 16-17.

REPORT AND RECOMMENDATION - 4

1   New evidence is material if it "bear[s] directly and substantially on the matter in dispute,"
2   and if there is a "reasonabl[e] possibility that the new evidence would have changed the outcome
3   of the ... determination." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir.2001) (quoting *Booz v.*
4   *Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984)).

5   In *Bruton*, the Ninth Circuit upheld the district court's denial of a motion for a sentence
6   six remand on an initial disability application following an award of benefits on a second
7   application. *Id.* The Ninth Circuit reasoned that Bruton's second application "involved different
8   medical evidence, a different time period, and a different age classification" and was therefore
9   not inconsistent with the ALJ's denial of Bruton's initial application. *Id.*

10  Plaintiff argues that the facts in this case are more analogous to those present in *Luna v.*
11  *Astrue*, in which the Ninth Circuit found that it could not conclude that an initial denial and
12  subsequent award were reconcilable or inconsistent when "[t]here was only one day between the
13  denial of Luna's first application and the disability onset date specified in the award for her
14  successful second application." 623 F.3d 1032, 1035 (9th Cir. 2010). The Ninth Circuit found
15  that on remand Luna "may have presented different medical evidence to support the two
16  applications, or there might be some other reason to explain the change." *Id.*

17  The additional medical evidence submitted in support of Plaintiff's September 14, 2018
18  disability application consists of treatment notes from 2017 and 2018, as well as an April 2019
19  consultative examination conducted by Anslem Parlatore, M.D. Dkt. 8-1, pp. 2-5. The evidence
20  crucial to a finding of disability in this case was not available to the ALJ or the Appeals Council
21  and is not available to this court except as a summary prepared by the non-examining state
22  agency consultant in connection with Plaintiff's disability claim. See Dkt. 8-1.

1    Having reviewed this evidence the state agency consultant, Dr. Forsyth, concluded that
2 there was "credible and consistent" new evidence that Plaintiff had an easily triggered, and
3 excessive, preoccupation with suffering caused by her migraine headaches, and functionally
4 disabling pain that met the diagnostic criteria for a previously undiagnosed somatic symptom
5 disorder. Dkt. 8-1, p. 7. Dr. Forsyth found that the evidence, including Dr. Parlatore's opinion,
6 supported a finding that Plaintiff had marked limitations in concentrating, persisting, and
7 maintaining pace and adapting and managing herself. *Id.* Dr. Forsyth found that Plaintiff
8 therefore met the criteria for listing 12.07 and was disabled "for at least" the six months
9 preceding Dr. Parlatore's examination. *Id.*

10    Dr. Forsyth's findings were based on his assessment of the medical record, in which he
11 categorized Plaintiff's behavior as:

> often histrionic (c/o HA from ambient light, chemical smells/office odors, weather changes, exaggerated startle response), dramatically regressive (lying on office floors in fetal position sobbing, rocking, shaking), mildly disordered/disorganized thought form, absent delusions, easily overwhelmed/intolerant of daily stressors for which she requires benzos TID and HA RX, which contribute to frequently appearing "overmedicated" when seen in tx. Carries portable fan to appt's to clear air in front of face to lessen HA trigger.

16 Dkt. 8-1, p. 7. Dr. Forsyth added that Plaintiff's activities of daily living were "severely
17 curtailed" by her migraines and her fear of triggering migraines by exposure to changes in
18 weather and stress. *Id.* Dr. Forsyth noted that Plaintiff was "credibly preoccupied" with suffering
19 migraines, citing Plaintiff's behavior during her consultative examination with Dr. Parlatore,
20 during which Plaintiff:

> came in with a fan and immediately plugged it into the wall and sat on the floor in front of the fan, because she said that there was, "a powdery smell, I'm trying to blow it out, so I don't get sucked in, l'm afraid it's going to trigger my headaches, and the pressure in my head, it's maybe baby powder or maybe cologne". She had called two weeks in advanced wondering about my waiting room and whether the lights were harsh or on and the windows, whether the blinds were open or closed

REPORT AND RECOMMENDATION - 6

>and she told me she was hyperventilating and claustrophobic. She was shaking and tremulous throughout the entire interview and had a very rapid pressured speech and to this examiners appreciation was hyperventilating, blowing out air through her nostrils and mouth, keeping two sets of glasses on and avoiding eye contact and she was cowering and in a fetal position on the floor with her fan. She was sobbing most of the time, and mentioned that if she goes out, say for shopping, she has a sleeping bag in the back of the car where she lies down and gets in the sleeping bag and can't continue on her task because of her migraines and worrying about triggers.

Dkt. 8-1, pp. 6-7. The facts in this case, on first review, appear more analogous to the facts present in *Bruton*. All the new evidence here is from at least six months after the ALJ issued his unfavorable decision. Dkt. 8-1, p. 5. There was a gap of more than a year between the ALJ's decision of June 14, 2017, and October 16, 2018, the date Plaintiff became disabled. Further, this case involves a finding of disability based on a previously undiagnosed impairment.

However, the record indicates that Plaintiff experienced symptoms that may indicate an onset date for somatic symptom disorder long before the condition was diagnosed by Dr. Forsyth in April 2019. As early as May 2013, Plaintiff's physician Carolyn Day, M.D., suspected that Plaintiff had an undiagnosed psychiatric condition, which Dr. Day initially classified as attention deficit disorder. AR 310-12. In October 2014, Plaintiff stated that her migraines were triggered by computers, weather changes, and hormone fluctuations. AR 332-33.

During therapy sessions in February 2015, Plaintiff stated that numerous things triggered her migraines, including sensitivity to fragrances, cigarettes, computers, weather conditions, and the fact that she was premenopausal. AR 292, 335. At this time Plaintiff stated that her migraine triggers were "too much" and made it difficult for her to continue working. AR 335. During an office visit in March 2015, Plaintiff stated that the clinic building was difficult to stay in because of scents that might trigger her migraines. AR 519-20. Plaintiff wore sunglasses and stood near an open window during this appointment. *Id.* During another March 2015 appointment, Plaintiff

REPORT AND RECOMMENDATION - 7

was "very uncomfortable" during an office visit, tried to move away from the fluorescent light in the hallway and insisted that her physician turn off the lights in the examination room. AR 834.

In a function report completed in April 2015, Plaintiff stated that her senses get "overwhelmed" when she is around lights or computers, and that she has a hard time being around "too much stimulation" because she fears that it will trigger her migraines. AR 231. Plaintiff also stated she is "constantly triggered" by things that could cause her migraines, including exercise, using the bathroom, eating cooked foods, changing body positions, and changes in weather conditions. AR 232-33, 236.

During an appointment in May 2015, Plaintiff sat in a dark room and asked her physician to turn a computer screen away from her to avoid triggering her migraines. AR 340. During a different therapy appointment in May 2015, Plaintiff again asked her therapist to turn off the lights. AR 348. During a May 2015 consultative examination with Bruce Duthrie, Ph.D., Plaintiff entered the examination room crying, saying "I don't know what to do" and stating that the examination room was "a new place and it's musty and it's bright." AR 314. Plaintiff asked Dr. Duthrie to turn the lights down. *Id.* During the exam, Plaintiff placed a scarf over her nose to block the supposedly musty smell in the building, stated that she could not work in certain areas because she was sensitive to perfume and smoke, and observed that the building was "a little toxic." AR 314-15. Dr. Duthrie characterized Plaintiff as "very histrionic" and stated that Plaintiff continued to cry throughout the examination. AR 314-15. Plaintiff again stated her belief that barometric pressure affects her migraines, and added that she listens to the weather report to "see what she can tolerate." AR 316.

In June 2015, when hiring an attorney to pursue her disability claim, Plaintiff expressed concern that her attorney's office was next to a nail salon, which Plaintiff thought would trigger

her migraines due to the smell emanating from the salon. AR 350-51. When Plaintiff's attorney refused to meet her elsewhere, Plaintiff stated that she would "make it work" by bringing a fan to the attorney's office. *Id.*

During a therapy appointment in July 2015, Plaintiff became "too flustered/panicked" to stay in the clinic, and her appointment was conducted outside the clinic building. AR 439-41. In July 2015, Plaintiff reported that her migraines had been triggered by a change in atmospheric pressure and caused her to vomit. AR 479. During this period, Plaintiff's psychiatrist stated that Plaintiff's fear of migraines was contributing to her hypervigilance. AR 494. Throughout 2015, Plaintiff continued to report that her migraines were triggered by computers, lights, and weather changes. AR 541-44, 574, 582-83, 588-89, 630, 650.

During an appointment in January 2016, Plaintiff sat on the floor of the examination room with a fan blowing on her face, an ice pack on her neck, and a vomit bag in her hand. AR 718. In July 2016, Plaintiff's treating physician noted that she was having difficulty finding a room where she could examine Plaintiff because of Plaintiff's "issues with smells" and a need to enter the room through a back door. AR 805. In November 2016, Plaintiff again reported that weather changes, scents, and light triggered her migraines. AR 523-24. In January 2017, Plaintiff's therapist again noted that Plaintiff's migraines are triggered by light and certain smells, and that Plaintiff receives therapy in a dark room. AR 838. During an office visit in February 2017 Plaintiff again asked her physician to turn off the lights, and had a fan blowing in her face. AR 846.

The record shows that Plaintiff was preoccupied with triggering her migraines in a way that caused major emotional distress and difficulty functioning. The record likewise indicates

1   that Plaintiff began exhibiting these symptoms long before October 16, 2018, the date the Social
2   Security Administration found her to be disabled.
3       The medical records, testimony and documentation concerning symptoms Plaintiff
4   exhibited prior to the ALJ's decision would need to be reviewed by a medical expert advisor on
5   remand to determine the onset date of somatic symptom disorder. *Diedrich v. Berryhill,* 874 F.3d
6   634, 638-40 (9th Cir. 2017); *See,* 20 CFR 404, Subpart P, Appendix 1-Part A2, listing 12.00
7   Mental Disorders, and 12.07 Somatic symptom and related disorders.
8       As such, the Court finds that the subsequent grant of benefits was based on new, material
9   evidence not considered by the ALJ as part of the first application, namely Dr. Forsyth's
10  diagnosis of somatic symptom disorder. Had the ALJ been aware of this diagnosis, the ALJ may
11  have interpreted the record differently, and may have found that Plaintiff's somatic symptom
12  disorder met listing 12.07 earlier than October 16, 2018. Dr. Forsyth's statement that Plaintiff's
13  somatic symptom disorder was disabling "at least" as far back as October 16, 2018 shows that a
14  remand is required to evaluate whether it may have become disabling before this date. Dkt. 8-1,
15  p. 7. *See generally, Easter v. Bowen,* 867 F.2d 1128, 1129-30 (8th Cir. 1989); *Lori H. v.*
16  *Berryhill,* No. 3:18-CV-0472 (DEP), 2019 WL 1578195 (N.D.N.Y. 2019) (reversing and
17  remanding, where ALJ failed to account for symptoms and limitations associated with a
18  diagnosis of somatoform or somatic symptom disorder.)
19      Accordingly, remand for further proceedings is the appropriate remedy. On remand, the
20  Court should direct that Plaintiff provide the ALJ with the post-hearing evidence that supports
21  Dr. Forsyth's diagnosis, including the results of Dr. Parlatore's consultative examination and any
22  treatment notes not previously available to the ALJ. The ALJ shall assess this evidence in light
23  of Dr. Forsyth's diagnosis of somatic symptom disorder, and obtain the assistance of a medical
24
25

expert , to determine the onset date when Plaintiff's somatic symptom disorder became disabling.

### B. Other Issues

Plaintiff maintains that the ALJ erred in evaluating the medical opinion evidence and Plaintiff's symptom testimony. Dkt. 8, pp. 4-12. The Court has directed the ALJ to re-assess the medical record in light of Dr. Forsyth's diagnosis of somatic symptom disorder, and to consider new evidence previously unavailable to the ALJ. Because this new evidence may affect the ALJ's assessment of the opinion evidence and Plaintiff's testimony, the Court declines to address these issues, and instead directs the ALJ to reweigh the opinion evidence and Plaintiff's symptom testimony as necessary on remand.

### C. Remand for Further Administrative Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.2d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, No. 15-15277, slip. op. at 7 (9th Cir. Nov. 7, 2017). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, No. 15-16477, slip op. at 37 (9th Cir. Oct. 26, 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only "where '(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Trevizo*, 871 F.2d at 682-83 (quoting *Garrison v, Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

Here, the record is clear that Plaintiff suffers from a somatic symptom disorder, and that the symptoms of this disorder manifested long before Plaintiff was found disabled. However, there remains a degree of uncertainty concerning precisely when Plaintiff's condition became disabling. On remand, the Court should order that the ALJ shall consider the post-hearing evidence that supports Dr. Forsyth's diagnosis of somatic symptom disorder and his finding that Plaintiff's condition meets listing 12.07. The Court should order the ALJ to re-evaluate the medical record, taking into consideration these findings and determining, with the assistance of a medical advisor who has appropriate qualifications as an expert, to ascertain precisely when Plaintiff's condition became disabling. *See Diedrich v. Berryhill,* 874 F.3d 634, 638-40 (9th Cir. 2017) (ALJ erred by failing to supplement the record with testimony from a medical advisor in order to determine the date of onset for a psychological condition).

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined Plaintiff to be not disabled, and therefore that it reverse the ALJ's decision and remand this matter for further administrative proceedings pursuant to sentence six of 42 U.S.C. 405(g).

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on November 21st, 2019, as noted in the caption.

Dated this 7th day of November, 2019.

_Theresa L. Fricke_
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13